# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| RICHARD MITTLESTADT, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, <br><br> Defendant. | CASE NO. 10cv5416-RJB-JRC <br><br> REPORT AND RECOMMENDATION <br><br> Noted for July 8, 2011 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (see ECF Nos. 16, 21, 22).

After considering and reviewing the record, the undersigned finds that the administrative law judge failed to consider properly the lay testimony by failing to provide reasons germane to the testimony of plaintiff's mother and wife sufficient to reject these opinions. The administrative law judge also committed legal error when evaluating the medical evidence by substituting his own interpretation of the medical evidence over that of the examining physician, Dr. Clem, and by failing to provide specific and legitimate reasons to reject Dr. Clem's opinions.

REPORT AND RECOMMENDATION - 1

## BACKGROUND

Plaintiff, RICHARD MITTLESTADT, worked for many years as a carpenter in the construction industry (see Tr. 50-51). As he described it, he "took piles of lumber and turned them into houses" (Tr. 51). As assessed by one of his doctors, due "to his large size and muscular nature, he has tended to lift and move incredibly heavy objects throughout the years," likely causing him to suffer from chronic pain (Tr. 168). Plaintiff has suffered several traumatic injuries to various areas of his body and was thirty-eight years old on his alleged disability onset date of February 15, 2001 (see Tr. 24, 50, 145).

## PROCEDURAL HISTORY

On December 13, 2004, plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning February 15, 2001 (Tr. 50). Plaintiff's claim was denied initially on May 12, 2005 (Tr. 26) and following reconsideration on October 10, 2005 (Tr. 25, 42). On October 15, 2007 plaintiff received his requested hearing before Administrative Law Judge M. J. Adams (hereinafter "the ALJ") (Tr. 247-74). Plaintiff and his wife, Ms. Annette M. Mittlestadt, testified at this hearing (id.). On December 27, 2007, the ALJ issued a written opinion finding that plaintiff was not disabled pursuant to the Social Security Act from February 15, 2001 through the date of the decision (Tr. 24).

On April 22, 2010, the Appeals Council denied plaintiff's request for review, making the December 27, 2007 written decision by the ALJ the final agency decision subject to judicial review (Tr. 4-6, 7). See 20 C.F.R. § 404.981. On June 17, 2010, plaintiff filed a complaint in this Court seeking judicial review of the December 27, 2007 decision of the ALJ. On November 16, 2010, plaintiff filed an opening brief (ECF No. 16). Defendant filed a responsive brief on January 27, 2011 (ECF No. 21) and plaintiff filed a reply on February 10, 2011 (ECF No. 22).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing* Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402 U.S. 389, 401 (1971). ). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence." See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r

of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

However, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for h[is] decision and [the courts] confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941(7th Cir. 2002) (*citing* SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943) (other citations omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (*citing* Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (*citing* Chenery Corp., 232 U.S. at 196)); Griemsmann v. Astrue, 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 124952 at *8, (W.D. Wash. 2009) (J. Theiler) (*citing* Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003)), *adopted and remanded by* 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 98985 (2009) (J. Zilly).

## DISCUSSION

1. The ALJ failed to evaluate properly the lay testimony provided by plaintiff's wife, Ms. Mittlestadt, and plaintiff's mother, Ms. Mittlestadt Heath.

Although plaintiff does not raise the issue of the ALJ's improper evaluation of the lay testimony in his introductory statement of the issues presented, he does contend in his opening brief specifically that "the ALJ erroneously discounted Mr. and Mrs. Mittlestadt's testimony" (ECF No. 16, pp. 2, 10). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence." Bruce, supra, 557 F.3d at 1115.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," 20 C.F.R. § 404.1513(d)(4), and "other sources" such as nurse practitioners and naturopaths, who are considered other medical sources[1], 20 C.F.R. § 404.1513(d)(1). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d), (d)(3)).

An ALJ may disregard opinion evidence provided by "other sources," characterized recently by the Ninth Circuit as "lay testimony," "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (*citing* Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* Van Nguyen, supra, 100 F.3d at 1467).

According to the Ninth Circuit, an ALJ may not rely upon a witness' relationship or abstract financial interest as a reason to discredit her testimony. Valentine v. Comm'r SSA, 574 F.3d 685, 694 (9th Cir. 2009). Absent "evidence that a specific [lay witness] exaggerated a claimant's symptoms *in order* to get access to his disability benefits," an ALJ may not reject that

---

[1] "Other sources" specifically delineated in the relevant federal regulations also include "educational personnel," see 20 C.F.R. § 404.1513(d)(2), and public and private "social welfare agency personnel," see 20 C.F.R. § 404.1513(d)(3).

REPORT AND RECOMMENDATION - 5

witnesses' testimony with a general finding that the witness is "an 'interested party' in the abstract." Id. In addition, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

In this case, the ALJ specifically "considered opinions of lay witnesses," including those of Ms. Annette M. Mittlestadt, plaintiff's wife, and of Ms. Myra Mittlestadt Heath, plaintiff's mother (see Tr. 23, 74-82, 106-108). The ALJ included the following in the written opinion:

> [Plaintiff]'s wife completed a Function Report in January 2005 in which she stated that lifting, bending, stair climbing, kneeling, walking, squatting, sitting, and reaching caused increased pain. She said that his memory and concentration were also impaired (Ex. 4E). [Plaintiff]'s mother wrote a letter indicating that [plaintiff] is in constant pain. She stated that he relied on friends and his sons to perform the harder work around the home that he used to do. She said that if he exerted himself, he slept less at night and had difficulty moving the next day due to pain (Ex. 11E). I have considered these opinions, and note that while some of the expressed limitations are adequately addressed by the limitation to a more limited residual functional capacity than his former work, greater weight overall is given to the opinions of the State agency medical consultants, who reviewed medical evidence in formulating their opinion. I also note the allegations of [plaintiff]'s functioning contained in [plaintiff]'s wife's testimony are not fully supported by the objective medical evidence, as discussed in detail above.

(Tr. 23).

The ALJ gives only one reason to discount the opinions by plaintiff's mother regarding plaintiff's constant pain and difficulties following exertion (id.). The ALJ discounted the lay opinions of Ms. Heath because the ALJ gave greater weight to the state agency medical consultants who reviewed medical evidence in formulating their opinion (see id.).

Lay witnesses are "other sources," and by definition are not "acceptable medical sources" basing their opinions on medical evidence. 20 C.F.R. § 404.1513(d)(1). The Ninth Circuit nevertheless has characterized lay witness testimony as "competent evidence," reiterating the

REPORT AND RECOMMENDATION - 6

conclusion that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" Bruce, supra, 557 F.3d at 1115. As all lay witnesses by definition are not basing their opinions on medical evidence, the Court concludes that the ALJ's decision to discount the lay opinion by Ms. Heath because it was not based on a review of medical evidence was not a reason germane to the particular lay witness and does not give much support for the decision to discount her opinions. See id.; see also 20 C.F.R. § 404.1513(d)(1).

The Court cannot conclude confidently that "no reasonable ALJ, when fully crediting the testimony" provided by Ms. Heath "could have reached a different disability determination," therefore the ALJ's error in evaluating Ms. Heath's testimony was not harmless. Stout, 454 F.3d at 1056.

The ALJ also gave this same reason of a failure to review medical evidence in support of the decision to discount the lay testimony provided by plaintiff's wife, Ms. Mittlestadt (Tr. 23). Again, the Court concludes that this reason is not germane to the particular lay witness. See Bruce, supra, 557 F.3d at 1115. The ALJ also supported the partial rejection of the testimony of Ms. Mittlestadt by concluding that the allegations of plaintiff's functioning contained in her testimony were not fully supported by the objective medical evidence (Tr. 23). The ALJ does not specify which opinion in Ms. Mittlestadt's testimony was inconsistent with which particular report in the objective medical evidence, and there are aspects of her opinion the ALJ appears not to address (see Tr. 23). Based on a review of the relevant record, the Court concludes that the ALJ's conclusion in this regard is not based on substantial evidence in the record. See Bayliss, supra, 427 F.3d at 1214 n.1. The ALJ's error in evaluating the lay testimony by Ms. Mittlestadt cannot be considered harmless by this Court, based on a review of the relevant record. See Stout, 454 F.3d at 1056.

The Court concludes that the ALJ committed harmful legal error by failing to evaluate properly the lay testimony provided by plaintiff's mother, Ms. Heath and by plaintiff's wife, Ms. Mittlestadt. See Bruce, supra, 557 F.3d at 1115. Therefore the undersigned recommends that this matter be reversed and remanded to the administration for further consideration.

2. The ALJ failed to evaluate properly the medical evidence.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))).

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with other substantial evidence in the case record." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902 (nontreating physician is one without "ongoing treatment relationship"). The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9. However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.

1989)). In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (*citing* Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) ("the ALJ erred in failing to meet, either explicitly or implicitly, the standard of clear and convincing reasons required to reject an uncontradicted opinion of an examining psychologist") (*citing* Lester, supra, 81 F.3d at 830). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, legitimate reasons that are

supported by substantial evidence in the record." Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831).

Although it is often the case that a claimant's failure to comply with prescribed treatment calls into question the severity of the claimant's symptoms, this generally is because such failure suggests that the claimant willfully is failing to submit to medical treatment because he or she wishes to remain disabled and receive benefits, or because he or she is not suffering from that severe of an impairment if not doing everything possible to remedy it. See 20 C.F.R. § 404.1530; see also SSR 96-7 1996 SSR LEXIS 4, at *21-*22; but see Nichols v. Califano, 556 F.2d 931, 932 (9th Cir. 1977). However, a good reason can provide a valid excuse for not following prescribed treatment, such as that a treating family physician does not recommend the treatment, or that it is excessively painful or dangerous. 20 C.F.R. § 404.1530; SSR 96-7 1996 SSR LEXIS 4, at *21-*22; Nichols, supra, 556 F.2d at 933.

When a mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a willful failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that he needs his medication, or he may not even realize that his "condition reflects a potentially serious mental illness." Van Nguyen, supra, 100 F.3d at 1465. "'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Id. (*quoting* with approval, Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

When a person suffers from a mental illness, especially a severe one such as the severe mood disorder suffered by plaintiff here, (Tr. 14), and the mentally ill person does not have the requisite insight into his or her condition, or does not have the memory and focus to have the ability to take a medication three times a day, this fact actually can indicate a greater severity of

mental incapacity. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at 1124. In addition, according to Social Security Ruling, (hereinafter "SSR"), SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7, 1996 SSR LEXIS 4, at *21-*22.

        a.   Dr. Joseph B. Clem, M.D., examining physician

On April 23, 2005, Dr. Joseph B. Clem, M.D., (hereinafter "Dr. Clem") examined plaintiff. He observed that plaintiff "was deemed a good and reliable source of history" (Tr. 217). Dr. Clem noted that plaintiff was not taking any psychotropic medications, but also noted that during past trials of anti-depressants, including Effexor, Zoloft and nortriptyline, "none of these medications proved effective for his depression symptoms" (id.). Dr. Clem explicitly conducted a mental examination of plaintiff (Tr. 219-20). He observed that plaintiff "moved somewhat slowly and appearing to be in pain during the interview," among other observations (Tr. 219). Dr. Clem assessed that there was "no evidence of any malingering or factitious behavior" (id.). Dr. Clem assessed plaintiff's mood as depressed, and noted that plaintiff was "quite tearful through several portions of the interview, particularly when discussing not being able to work full time and provide for his family" (id.).

Dr. Clem diagnosed plaintiff with mood disorder, depressed type, secondary to chronic pain, among other things, and rated plaintiff global assessment of functioning at 54 (Tr. 220). Dr. Clem indicated that plaintiff's "emotional difficulties are potentially treatable, although there

would be no guarantee of response" (id.). He explained that this was due to the lack of appreciable effect from plaintiff's previous medication trials (id.).

Dr. Clem also explicitly made work-related functional assessments (Tr. 220-21). He assessed that plaintiff "might experience some problems in performing work activities on a consistent basis, given the likelihood of worsening depressive episodes" (Tr. 221). Dr. Clem also concluded that plaintiff "would likely experience some interruptions in maintaining regular attendance in the workplace" due to exacerbation of his depression, which Dr. Clem assessed as "particularly likely, given that he has had poor response to treatment for his chronic pain" (id.). Finally, Dr. Clem concluded that plaintiff "would not be anticipated to overall deal well with the usual stressors encountered in a competitive workplace environment" (id.).

The ALJ included the following in the written decision regarding Dr. Clem:

> Consultative examiner Dr. Clem opined that the claimant was capable of simple, repetitive tasks, and also indicated that any social limitations would be of a mild degree (Ex. 9F/4). These findings are generally consistent with the residual functional capacity set out above. However, Dr. Clem also stated that the claimant might experience some difficulty in performing work on a consistent basis, given the likelihood of worsening depressive symptoms. He opined that the claimant would likely experience some interruptions in maintaining regular attendance due to exacerbations of depression, and therefore he did not anticipate the claimant to overall deal well with the usual stressors in a competitive workplace environment (Ex. 9F/5). Dr. Clem's opinion is not afforded significant weight. The record shows that the claimant's depression has been relative mild and he has not received any treatment aside from medications that he did not take continuously. Dr. Moore noted the claimant's report that his symptoms were better without medications (Ex. 6F/20 [Tr. 208]). Dr. Clem himself assigned a global assessment of functioning (GAF) score of 54, indicating only moderate symptoms or moderate limitations, which does not support his opined limitations (Ex. 9F/4). The record established that the claimant's depression has been stable and that he does not require medications to control his symptoms. I therefore do not afford significant weight to Dr. Clem's opined limitations resulting from supposedly 'worsening' depression, as the rest of the record is inconsistent with his opinion.

(Tr. 22).

First, when a mental impairment is involved, assuming that a failure to comply with prescribed treatment suggests a willful failure to comply with prescribed treatment can be illogical. See Van Nguyen, supra, 100 F.3d at 1465. A person suffering from a mental illness or mood disorder such as that suffered by plaintiff here, may not realize that he needs his medication, or he may not even realize that his "condition reflects a potentially serious mental illness." Id. In addition, a failure to comply continuously with treatment does not call into question the severity of plaintiff's complaints when the record reflects that the prescribed treatment was unsuccessful at treating plaintiff's complaints (see Tr. 16-17, 217, 220). The Court concludes that in this particular circumstance, the ALJ not provide substantial support for the decision to discredit the opinion of an examining physician who specifically noted multiple unsuccessful attempts by plaintiff to obtain relief from his symptoms with treatment, on the basis that plaintiff "has not received any treatment aside from medications that he did not take continuously." See id.

Furthermore, Dr. Clem was aware of these factors, conducted a mental status examination and nevertheless opined that plaintiff suffered from several work-related limitations. The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The mental status examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). The ALJ does not explain adequately why his assessment, including a characterization of plaintiff's depression as "mild," is more correct than that of Dr. Clem, an examining physician. This was legal error, as the ALJ must explain why his interpretations are correct over those of the doctor. See Reddick,

supra, 157 F.3d at 725. For these reasons, the Court does not find substantial support for the ALJ's decision not to assign significant weight to the opinion by examining physician Dr. Clem from the characterization by the ALJ of plaintiff's depression as "mild," or from the fact that plaintiff did not consistently take medications that may not have afforded him any symptom relief.

The ALJ also supports the lack of significant weight given to Dr. Clem's opinions about plaintiff's multiple functional limitations on the basis that Dr. Clem's assignment of a GAF of 54, indicating moderate symptoms, does not support Dr. Clem's opined limitations (Tr. 22). However, the ALJ does not find that a GAF of 54 necessarily is inconsistent with the multiple areas of functional limitation found by Dr. Clem, and, indeed the Court concludes based on the relevant record that it is not. The GAF represents, by definition, a global assessment of functioning, and plaintiff's GAF of 54 likely includes an assessment of areas in which plaintiff suffers greater limitation that a functional rating of 54 would warrant, and areas in which plaintiff suffers a lesser limitation than a functional rating of 54 would warrant. A GAF of 54 does not indicate that in each and every aspect of functioning plaintiff's rating is exactly 54. The Court concludes that, based on a review of the relevant record, Dr. Clem's opinions regarding plaintiff's functional limitations are consistent with the relevant record, and are consistent specifically with a global assessment of functioning rating of 54. Therefore, the Court finds that this reason by the ALJ does not provide substantial support for the ALJ's decision to discount Dr. Clem's opinions.

The decision not to assign significant weight to Dr. Clem's opinions also was based on the ALJ's characterization of plaintiff's depression as "stable," which does not provide substantial support for the assignment of lesser weight, and on the ALJ's conclusion that plaintiff

supra, 157 F.3d at 725. For these reasons, the Court does not find substantial support for the ALJ's decision not to assign significant weight to the opinion by examining physician Dr. Clem from the characterization by the ALJ of plaintiff's depression as "mild," or from the fact that plaintiff did not consistently take medications that may not have afforded him any symptom relief.

The ALJ also supports the lack of significant weight given to Dr. Clem's opinions about plaintiff's multiple functional limitations on the basis that Dr. Clem's assignment of a GAF of 54, indicating moderate symptoms, does not support Dr. Clem's opined limitations (Tr. 22). However, the ALJ does not find that a GAF of 54 necessarily is inconsistent with the multiple areas of functional limitation found by Dr. Clem, and, indeed the Court concludes based on the relevant record that it is not. The GAF represents, by definition, a global assessment of functioning, and plaintiff's GAF of 54 likely includes an assessment of areas in which plaintiff suffers greater limitation that a functional rating of 54 would warrant, and areas in which plaintiff suffers a lesser limitation than a functional rating of 54 would warrant. A GAF of 54 does not indicate that in each and every aspect of functioning plaintiff's rating is exactly 54. The Court concludes that, based on a review of the relevant record, Dr. Clem's opinions regarding plaintiff's functional limitations are consistent with the relevant record, and are consistent specifically with a global assessment of functioning rating of 54. Therefore, the Court finds that this reason by the ALJ does not provide substantial support for the ALJ's decision to discount Dr. Clem's opinions.

The decision not to assign significant weight to Dr. Clem's opinions also was based on the ALJ's characterization of plaintiff's depression as "stable," which does not provide substantial support for the assignment of lesser weight, and on the ALJ's conclusion that plaintiff

supra, 157 F.3d at 725. For these reasons, the Court does not find substantial support for the ALJ's decision not to assign significant weight to the opinion by examining physician Dr. Clem from the characterization by the ALJ of plaintiff's depression as "mild," or from the fact that plaintiff did not consistently take medications that may not have afforded him any symptom relief.

The ALJ also supports the lack of significant weight given to Dr. Clem's opinions about plaintiff's multiple functional limitations on the basis that Dr. Clem's assignment of a GAF of 54, indicating moderate symptoms, does not support Dr. Clem's opined limitations (Tr. 22). However, the ALJ does not find that a GAF of 54 necessarily is inconsistent with the multiple areas of functional limitation found by Dr. Clem, and, indeed the Court concludes based on the relevant record that it is not. The GAF represents, by definition, a global assessment of functioning, and plaintiff's GAF of 54 likely includes an assessment of areas in which plaintiff suffers greater limitation that a functional rating of 54 would warrant, and areas in which plaintiff suffers a lesser limitation than a functional rating of 54 would warrant. A GAF of 54 does not indicate that in each and every aspect of functioning plaintiff's rating is exactly 54. The Court concludes that, based on a review of the relevant record, Dr. Clem's opinions regarding plaintiff's functional limitations are consistent with the relevant record, and are consistent specifically with a global assessment of functioning rating of 54. Therefore, the Court finds that this reason by the ALJ does not provide substantial support for the ALJ's decision to discount Dr. Clem's opinions.

The decision not to assign significant weight to Dr. Clem's opinions also was based on the ALJ's characterization of plaintiff's depression as "stable," which does not provide substantial support for the assignment of lesser weight, and on the ALJ's conclusion that plaintiff

does not require medication to control his symptoms, apparently based on the March 3, 2004 assessment by Dr. Donna E. Moore, M.D. (hereinafter "Dr. Moore") (see Tr. 22, 208).

The Court observes that Dr. Moore examined plaintiff many times, including two months after the March 3, 2004 assessment (Tr. 207). On June 8, 2004, Dr. Moore diagnosed plaintiff with depression, and concluded that plaintiff was "obviously very depressed" (id.). She also noted that plaintiff could not afford to take Effexor at that point in time (id.). The Court notes that the ALJ failed to note this potential reason documented in the record as to why plaintiff may not have been taking his medications continuously. In addition, the Court finds that Dr. Moore's assessment on March 3, 2004 that plaintiff's depression was better is likely to reflect a temporary situation, as demonstrated by her finding two months later that he was "obviously very depressed" (Tr. 207, 208; see also Tr. 197). On March 23, 2005, Dr. Moore diagnosed plaintiff with "reactive depression" and concluded that "we've tried Zoloft, Effexor and Doxepin without any relief" (Tr. 197). In another section of the decision, the ALJ noted that Lexapro also was prescribed for plaintiff's depression but was found to be ineffective (see Tr. 16). The Court concludes that the ALJ's reliance on the March 3, 2004 report of Dr. Moore to support the conclusion that plaintiff's depression was "stable" and furthermore to support the conclusion that "the rest of the record is inconsistent with" Dr. Clem's opinion regarding plaintiff's functional limitations was without substantial evidence in the record as a whole.

For the aforesaid reasons, the Court concludes that the ALJ failed to evaluate properly the medical evidence supplied by examining physician Dr. Clem and did not provide legitimate reasons to discount his opinions. See Lester, supra, 81 F.3d at 830-31. This legal error is an independent basis to reverse and remand this matter to the administration for further consideration.

## CONCLUSION

The ALJ failed to consider properly the lay testimony by failing to provide reasons germane to the testimony of plaintiff's mother and wife sufficient to reject these opinions. The ALJ also committed legal error when evaluating the medical evidence by substituting his own interpretation of the medical evidence over that of examining physician Dr. Clem and by failing to provide specific and legitimate reasons to reject Dr. Clem's opinions.

Therefore, this matter should be **REVERSED** and **REMANDED** to the administration for further consideration.

Because of these aforesaid errors, the administrative law judge on remand should reevaluate the record anew as a whole, make a new, full, sequential disability evaluation and issue a new decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **July 8, 2011**, as noted in the caption.

Dated this 15th day of June, 2011.

J. Richard Creatura
United States Magistrate Judge